**JENSCH v. UNITED STATES.**

No. 48592.

United States Court of Claims.
July 13, 1953.

Samuel W. Jensch, pro se.

Wilson Myers, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

WHITAKER, Judge.

Plaintiff was a reserve officer in the United States Coast Guard. He was relieved from active duty on July 26, 1946. He sues for the cost of transportation of some of his household goods from Hudson, Wisconsin, a town near Minneapolis, Minnesota, and of others from Arlington, Virginia, all to Washington Grove, Maryland, within one year after he was released from active duty.

Plaintiff's right to recover depends upon the Pay Readjustment Act of 1942, 56 Stat. 359, as amended by the Act, U.S.Code Cong.Service, 1942, pp. 559, 565, of August 2, 1946, 60 Stat. 858, 860; 37 U.S.C. 112, and the regulations issued pursuant thereto. Section 12, as amended, reads in part as follows:

"* * * When any officer * * having dependents as defined in section 104 of this title, is ordered to make a permanent change of station, the United States shall furnish transportation in kind from funds appropriated for the transportation of the * * * Coast Guard * * * to his new station for such dependents: * * And provided further, That in lieu of transportation in kind authorized by this section for dependents, the Presi-

dent may authorize the payment in money of amounts equal to such commercial transportation costs for the whole or such part of the travel for which transportation in kind is not furnished when such travel shall have been completed.

"Upon changes of station, members of the services mentioned in the title of this Act shall be entitled to transportation (including packing, crating, drayage, temporary storage, and unpacking) of baggage and household goods and effects, or reimbursement therefor, as authorized by regulations prescribed by the heads of the departments concerned, which shall be uniform for the services mentioned and shall be approved by the President. Such transportation may be by rail, water, or van, without regard to comparative costs.

"The words 'permanent change of station' as used in this section shall include the change from home to first station and from last station to home when ordered to active duty other than training duty, of any officer, warrant officer, nurse, or enlisted man of the * * * [Coast Guard] * * * including retired personnel and members of the Reserve components thereof, in a grade for which the transportation of dependents is authorized at Government expense, and the change from last station to home in connection with retirement, relief from active duty, or transfer to a Reserve component."

Under this section of the Act, plaintiff would be entitled to the transportation of his household effects from Washington, D. C., which was his station at the time of his relief from active duty, to Minneapolis, Minnesota, which was his home at the time he was called into active service. However, article 467(7), Amendment No. 99, dated June 1945, of the Pay and Supply instructions of the United States Coast Guard, provides in part as follows:

"* * * Upon termination of active duty or temporary active duty, the permanent or temporary change of station allowances, as the case may be, are authorized between any points but limited in cost to shipment of the same weight within allowance from place of duty to the home of record at time ordered to active duty. However, if no shipments have been made under previous change of station orders, such orders may be used in conjunction with orders terminating permanent active duty but limited in cost to shipment from such previous duty station to the home of record at time ordered to active duty."

No question is made of the validity of this regulation. Under it plaintiff is entitled to the cost of shipping his household effects from any place to any other place provided the cost thereof does not exceed the cost of shipping them from Washington, D. C., to Minneapolis, Minnesota, but in any event to the extent of such cost.

The cost of shipping plaintiff's household effects from Hudson, Wisconsin, to Washington Grove, Maryland, and from Arlington, Virginia, to Washington Grove, Maryland, was $301.27. The cost of shipping these household effects from Washington, D. C., to Minneapolis, Minnesota, would have been as much or more.

The only reason for the disallowance of this claim by the General Accounting Office was that the household effects "were not brought into the service." This was based upon a ruling of the Comptroller General, reported in 26 Comp.Gen. 925, which read in part:

"* * * that such regulations contemplate that the right to transportation of household effects shall accrue upon release from active duty only as to 'such household effects as are at that time at a point other than the home of record of the officer or enlisted man concerned and may not be considered as authorizing transportation of household effects at Government expense from the home of record to a selected place upon relief from active duty.'"

In other words, the Comptroller General rules that a reserve officer called into active duty must have moved his household effects from his home station to a station

to which he may have been assigned on active duty, in order to be entitled to Government transportation of them from his home station to some place which he selects; and that he is not entitled to Government transportation if he leaves them in storage at his home station, and uses rented or other furniture while in the service.

Such a ruling is not authorized by the regulations. Article 466(1) (a), Amendment No. 91, dated July 1944, of the Pay and Supply instructions of the United States Coast Guard, defines household effects as follows:

"Household effects shall comprise the personal belongings and household effects which exclusively the property of the person ordered to make the change of station and which have been in use by such person (or his family) previous to shipment thereof * * *."

This regulation does not say that the officer must have been using his household effects while he was in the service. It merely says that they must have been in use by him "previous to shipment thereof." How long prior to shipment he must have used them is not stated. If he had used them at any time before the shipment, he is entitled under the regulation to the allowance. What the Government was interested in was not the time when plaintiff had used his household goods, but the fact that they were his, and not the property of someone else. It seems to us that the Comptroller General has put a limitation on this regulation which the regulation itself does not put.

As a matter of fact, plaintiff would have been entitled to the cost of transporting his household goods in an amount much in excess of what he now claims, had he moved all of them every time his permanent station was changed. He was first ordered to proceed to New York, and then from New York to Philadelphia; from Philadelphia to Manhattan Beach, New York; from Manhattan Beach, New York, to Chicago, Illinois; and from Chicago, Illinois, to Washington, D. C. He was entitled to move his household effects and have the Government pay for the moving of them from each one of these stations to the other. Instead, he elected to leave most of them at his home station and use other furniture while he was in the service. He is asking the Government to pay him much less than the amount for which he could have made it liable. In equity he is entitled to what he claims, and the regulations give him what he claims.

We are of the opinion that plaintiff is entitled to recover of the defendant the sum of $301.27.

Plaintiff admits in his brief that he is not entitled to recover the cost of crating and shipping the stoker from Hudson, Wisconsin, to Washington Grove, Maryland, for the reason that he had never used it.

JONES, Chief Judge, and HOWELL, MADDEN, and LITTLETON, Judges, concur.